## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

JUSTIN WOOD,

         *Plaintiff,*

        v.

TRUSTEES OF DARTMOUTH COLLEGE
and
PORSCHA DOBSON HARNDEN,

        *Defendants,*

**Civil Action No.** _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Justin Wood ("Plaintiff" or "Wood") brings this Complaint (the "Complaint") against Defendant Dartmouth College ("Defendant Dartmouth") and Porscha Dobson Harnden ("Defendant Harnden" together with Defendant Dartmouth, the "Defendants"), for breach of contract, defamation and related causes of action, resulting in damage to Mr. Wood in both his reputation and his ability to obtain employment.

## Introduction

At every step of Justin Wood's coaching career prior to being named as the Head Coach of Dartmouth's Men's Cross Country Team on November 16, 2020, he enjoyed a high level of success. He coached numerous athletes who had won NCAA national championships and national athlete of the year honors. His teams won NJCAA National Championships, with one team even boasting six All-Americans and setting the NJCAA DIII Cross Country Championship meet record. He had been awarded numerous Coach of the Year Honors in both men's and women's cross-country categories, along with a wealth of coaching honors, including the NJCAA National Coach of the Year for both men's cross country and men's indoor track and field.

As a runner himself, Wood had won four individual national championships, three relay

national titles, and a men's cross country team national title.  He was inducted into the NJCAA DIII Cross Country/Track & Field Hall of Fame in 2010, while also being named to the SUNY Delhi Athletics Hall of Fame in 2016.

By all accounts, Wood was among the top track cross country coaches in the nation when Dartmouth named him as the Head Coach of Dartmouth's Men's Cross Country Team, and his impact on the program was substantial.  He led the Men's Cross Country Team to the NEICCCA Cross Country Team Championship title, their first in nine years, and that winter, the men's distance team had a historic season, too, with the distance medley relay winning the 2022 Ivy League Indoor Heptagonal Championships.

Unfortunately, at the time, Dartmouth's Track & Field and Cross-Country Programs were being led by Porscha Dobson Harnden.  During his tenure, Wood raised a number of concerns about Defendant Harnden, and his belief that she was leading those programs with a glaring disregard for Ivy League and NCAA policies, along with potential admissions fraud and laxities taken with the health and safety of Dartmouth's student-athletes.

After confronting Defendants, Wood was offered a severance agreement, which after some negotiation, he signed, and this is where the matters that are the subject of this Complaint arise—as Wood has been subject to defamatory remarks, in violation of the separation agreement, and which have hindered his ability to continue his career as a track and field coach.  Those remarks and their impact on Wood are the subject of this Complaint.

Following his departure, the Dartmouth cross-country team has not fared well, and ultimately, as of around August 2024, Defendant Harnden no longer appears on Defendant Dartmouth's website as the Director of Dartmouth Track & Field and Cross County.

**Parties**

1.       Plaintiff Justin Wood resides in Quechee, Vermont.

2.       Defendant Trustees of Dartmouth College's principal office address is located at 63 South Main Street, Suite 301, Hanover, New Hampshire.

3.       Upon information and belief, Defendant Porscha Dobson Harnden resides at 1765 Lois Lane, Auburn, Alabama.

**Jurisdiction and Venue**

4.       This Court has jurisdiction pursuant to 28 U.S.C. 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

5.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred, and/or a substantial part of property that is the subject of the action is situated, in this district.

**Facts**

6.       On or about November 16, 2020, Defendant Dartmouth hired Plaintiff Wood to be head coach of the men's cross-country team.

7.       At the time of Plaintiff Wood's hire, Defendant Harnden served as the Marjorie & Herbert Chase '30 Director of Dartmouth Track & Field and Cross Country.  Upon information and belief, Defendant Harnden held that position until August 20, 2024, when her name was removed as Director from Defendant Dartmouth's website.

8.       During his tenure, Wood raised a number of concerns about Defendant Harnden and his belief that she was leading those programs with a glaring disregard for Ivy League and NCAA policies, along with potential admissions fraud and laxities taken with the health and safety of Dartmouth's student-athletes

9.       On August 19, 2022, Wood and Defendant Dartmouth entered into a Separation

Agreement and General Release Agreement (the "Separation Agreement").

10.     In addition to severance benefits that would be paid to Wood, Defendant Dartmouth

(also known as the "Employer") agreed as follows:

> **10.     Non-Disparagement.** Employer agrees that it will not disparage or
> encourage or induce others to disparage Employee. For the purposes of this
> Agreement, the term "disparage" includes, without limitation, without
> limitation, any statement, written or oral, public or private, or engage in any
> other actions which disparages or discredits Employee to the press and/or
> media, any individual or entity with whom Employee had or has a business
> relationship which would adversely affect in any manner his reputation.
> Nothing in this paragraph shall preclude Employer from responding truthfully
> to a valid subpoena, a request by a governmental agency in connection with
> any investigation it is conducting, or as otherwise required by law.

11.     As the Marjorie & Herbert Chase '30 Director of Dartmouth Track & Field and Cross

Country, Defendant Harnden has apparent authority to speak and act on Defendant Dartmouth's

behalf.

12.     Shortly after signing the Separation Agreement, Plaintiff moved out of Vermont and

down to New Jersey.

13.     In late September 2022, Wood became aware of an opening for the position of Head

Coach of Track and Field at New York University ("NYU").

14.     On October 3, 2022, Wood met with the NYU Athletic Director and discussed

expectations and the potential job, and on or about October 13, 2022, Wood submitted a formal

application for the position.

15.     On or about December 7, 2022, Plaintiff was informed that, upon information and

belief, during a background check call with Dartmouth, the individual at NYU who was managing

the background check was informed that Wood had been blacklisted.  Further, upon information and

belief, the NYU individual who was managing the background check made a statement that

something happened at Dartmouth and "we just can't."

16.    On October 28, 2022, the following appeared online:



17.    When Plaintiff called the manager of the blog to regarding this false and defamatory information, and seeking to have it removed, the manager indicated to Plaintiff that he had spoken with Defendant Harnden's spouse regarding Wood's departure from Dartmouth.

18.    The statements against Wood are disparaging within the meaning of paragraph 10 of the Separation Agreement and are thus a breach of contract.

19.    Upon information and belief, Defendant Harnden made the statements with actual malice, in response to Wood's complaints of her improper conduct, *i.e.*, her glaring disregard for Ivy

League and NCAA policies, along with potential admissions fraud and laxities taken with the health and safety of Dartmouth's student-athletes.

20.    As a result of the defamatory statements and breach of contract, Plaintiff has suffered harm, including without limitation, the following: (1) financial losses stemming from the lost job opportunity at NYU, (2) compensatory damages resulting from the degradation of Plaintiff's reputation and foreseeable harm to his career, and (3) emotional distress.

21.    Defendant Dartmouth was made aware of the allegations by email correspondence from Wood's counsel on November 9, 2022.

22.    In a third incident, upon information and belief, Defendant Harnden, sometime in the Fall of 2022, told at least one individual and possibly a team captain, a cryptic reason for Wood's departure.  More specifically, there had been an incident or altercation involving Wood and a coach from another college, where the police were involved and the coach from the other school was immediately let go.  Harnden also indicated something to the effect that the matter was out of her hands to do anything about.

23.    Defendants have made no effort to correct any of the misconduct by public statement or otherwise.

24.    Upon information and belief, it is also understood by Wood that, in or around the middle of February 2024, in response to questions about Coach Wood's departure from Dartmouth, one of the Co-Chairs of the Friends of Dartmouth Track and Field, Dave Altman stated that "It was exclusively driven by Justin.  He resigned.  He quit.  I wish that weren't the case because it really impacted the kids….  There are a variety of legal matters that I am not privy to, and I am sure … you can appreciate … that from an employment perspective there's all kinds of privacy issues there, but it has been made abundantly clear to me and others … that the college did not terminate Justin. He voluntarily resigned, and the timing of it was a very big surprise to the coaches and to the

administration.  The timing couldn't have been worse.  …  It was a pretty shitty process."

25.     Upon information and belief, Mr. Altman stated further that, "I know that there was a lot more behind the scenes that I was ever privy to for appropriate employment rationale and reasons.  All I know is that his departure was a shock to the students and certainly a shock to those of us who have been involved in the organization.  Having spoken now to every one of the coaches, none of them knew that it was going to happen when it did.  None of them knew he was going to quit, and the rest of the coaches were beyond frustrated and upset with what he did.  That to me was interesting, because it was someone they had worked with and had a good working relationship."

26.     Those statements are false and, upon information and belief, have been made based upon misinformation from Defendants.

27.     Further, Defendant Dartmouth has taken concrete, retaliatory steps to prevent Wood from securing comparable employment.  By way of example, in 2024, Defendant Dartmouth removed Wood from the roster for (i) the 2021 Men's Cross-Country Team (for which he was Head Coach), (ii) the 2020-2021 Men's Track & Field Team (for which he was Assistant Coach) and (iii) the 2021-2022 Men's Track & Field Team (for which he was also Assistant Coach).  To this end, Defendant Dartmouth has published false information to the public such that it erroneously appears Wood did not serve in those coaching roles.

28.     Upon information and belief, this was done to interfere with Wood's application processes at other institutions, including Tufts.

29.     Indeed, other former employees terminated by Defendant Dartmouth are still listed in their coaching positions, including John Simons and Defendant Harnden.

30.     Of note, removing Wood's participation from Dartmouth's website took place after Wood reached out to Defendant Dartmouth to put them on notice of Defendant Harnden's misconduct.

## COUNT I: LIBEL *PER SE* AND SLANDER *PER SE*

31.    Plaintiff incorporates by reference the above paragraphs as if set forth here in their entirety.

32.    Defendant Harnden's and others' non-judicial statements disparaging Plaintiff Wood were made with actual knowledge that the allegations were false, compounding the injury to Wood and his reputation.

33.    To the extent that these false allegations were published orally, *e.g.*, to the editors at Letsrun.com, to an individual performing background checks for NYU, or generally to Dave Altman or others, the allegations constitute slander *per se.*  To the extent that these false allegations were published in writing, *e.g.*, in potential email communications, the allegations constitute libel *per se*.

34.    Defendants knew the statements to be false.

35.    Defendant Harnden knew the statements to be false, and they were intentionally false or made with reckless disregard for the truth, were asserted with actual malice, and for her own financial gain.

36.    Whether the false non-judicial assertions constitute libel *per se* when made in writing or slander *per se* when made orally, both entitle Plaintiff to reasonable damages without regard to whether he has sustained special damages.  However, Plaintiff alleges that he has in fact suffered special damages as a result of Defendants' conduct.

37.    Dartmouth further published false information about Wood when it removed mention of his coaching experience during the 2020, 2021, and 2022 seasons from its website.

38.    Given that Defendant Dartmouth had the ability at any time to make a public statement concerning the departure of Wood, and that there was no misconduct on his part, and did not do so, thus constitutes the type of wanton, oppressive, or malicious conduct entitling Plaintiff to

enhanced compensatory damages.

## COUNT II: BREACH OF CONTRACT

39.    Plaintiff incorporates by reference the above paragraphs as if set forth here in their entirety.

40.    The Separation Agreement between Defendant Dartmouth (also known as the "Employer") and Plaintiff provides as follows:

> **10. Non-Disparagement.**  Employer agrees that it will not disparage or encourage or induce others to disparage Employee.  For the purposes of this Agreement, the term "disparage" includes, without limitation, without limitation, any statement, written or oral, public or private, or engage in any other actions which disparages or discredits Employee to the press and/or media, any individual or entity with whom Employee had or has a business relationship which would adversely affect in any manner his reputation. Nothing in this paragraph shall preclude Employer from responding truthfully to a valid subpoena, a request by a governmental agency in connection with any investigation it is conducting, or as otherwise required by law.

41.    As the Marjorie & Herbert Chase '30 Director of Dartmouth Track & Field and Cross Country, Defendant Harnden has apparent authority to speak and act on Defendant Dartmouth's behalf.

42.    Upon information and belief, the coaches who spoke with Dave Altman have apparent authority to speak on behalf of Defendant Dartmouth.

43.    The statements against Wood are disparaging within the meaning of paragraph 10 of the Separation Agreement, and thus a breach of contract.

44.    Defendant Dartmouth, with no excuse for nonperformance, by and through its Director of Track & Field and Cross Country and other coaches breached the Separation Agreement.

45.    Upon notice of breach, Defendant Dartmouth failed to cure the breach or mitigate the damages suffered by Wood.

46.    The Separation Agreement provides further that:

> **Breach.** The Parties agree that in the event of any breach or threatened breach of this Agreement or default hereunder, the injured party has the right to pursue any legal action available to enjoin the breaching party from further injurious conduct and/or to recover damages from the breaching party for such conduct.

47.    Plaintiff is this entitled to the damages resulting from the breach, including the attorneys' fees and costs of this litigation.

48.    As a result of this breach, Plaintiff suffered damages in the form of: (1) financial losses stemming from the lost job opportunity at NYU, (2) compensatory damages resulting from the degradation of Plaintiff's reputation and foreseeable harm to his career, and (3) emotional distress.

## COUNT III: TORTIOUS INTERFERENCE IN
## PROSPECTIVE EMPLOYMENT RELATIONSHIP

49.    Plaintiff incorporates by reference the above paragraphs as if set forth here in their entirety.

50.    Upon information and belief, the Dartmouth employee who fielded the background check call from NYU informed NYU that Plaintiff had been blacklisted.

51.    Dartmouth knew that Plaintiff had an employment opportunity at NYU because it received a phone call inquiring about Plaintiff's employment with the intent of potentially employing Plaintiff at NYU.

52.    With that knowledge, Dartmouth intentionally and improperly interfered in that prospective employment relationship by informing NYU that Plaintiff had been blacklisted or providing other disparaging information.

53.    Dartmouth further interfered with Plaintiff's other prospective employment opportunities, including but not limited to Tufts, by deleting his participation as a coach from their website.

54.    As a result of Dartmouth's tortious interference, Plaintiff suffered damages in the form of: (1) financial losses stemming from the lost job opportunities at NYU and Tufts, (2) compensatory damages resulting from the that lost opportunity, and (3) emotional distress.

## REQUEST FOR A JURY TRIAL

55.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff respectfully requests that all issues herein properly triable by jury be so tried.

## PRAYERS FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

1.    that he be awarded reasonable damages, without regard for actual damages, on his claims for libel *per se* and slander *per se*;

2.    that he be awarded his actual compensatory damages and enhanced compensatory damages for Defendants' libel *per se* and slander *per se*;

3.    that he be awarded all other damages in the form of: (1) financial losses stemming from the lost job opportunity at NYU and Tufts, (2) compensatory damages resulting from the degradation of Plaintiff's reputation and foreseeable harm to his career, and (3) emotional distress.

4.    that the Court determine and award him his attorneys' fees and any costs associated with Defendants' breach of contract, or otherwise to the fullest extent permitted by law for interest to the full extent permitted by law; and

5.    for such other and further relief as this Court deems just and appropriate.

Respectfully submitted,
JUSTIN WOOD

By his attorneys,
SHAHEEN & GORDON, P.A.

Dated: August 12, 2025

*/s/ Olivia F. Bensinger*
Olivia F. Bensinger, Esq. (NH Bar #274145)
Shaheen & Gordon, P.A.
107 Storrs Street, P.O. Box 2703
Concord, NH 03302
(603) 225-7262
obensinger@shaheengordon.com

AND

*/s/ Benjamin Flam*
Philip Gordon, Esq.
Benjamin Flam, Esq.
Gordon Law Group, LLP
585 Boylston Street
Boston, MA 02116
(617) 536-1800
pgordon@gordonllp.com
bflam@gordonllp.com

*Pro hac vice applications forthcoming*