UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

JUSTIN WOOD,

     Plaintiff,

v.

TRUSTEES OF DARTMOUTH COLLEGE

     Defendant

Civil Action No. 1:25-cv-00304-SE

## PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Justin Wood ("Plaintiff" or "Mr. Wood") hereby objects to the Motion to Dismiss Counts I, III, and IV filed by Defendant Trustees of Dartmouth College ("Defendant" or "Dartmouth").

Plaintiff has sufficiently plead his defamation claim to inform Dartmouth of the alleged defamatory statements made by it and its agents, which is the requirement at this stage of the proceedings. None of Dartmouth's defenses to defamation succeed at defeating Wood's claims at the motion to dismiss stage.

Plaintiff has also sufficiently plead Dartmouth's tortious interference with his job application process at NYU, given the false statements made by Dartmouth directly led to Wood's failure to secure that position.

Finally, Plaintiff has sufficiently plead his claim under RSA 275-E because the case law only provides that the person has to be an employee at the time of protected report; not that the law only provides a remedy for those experiencing retaliation while still employed.

**<u>Relevant Facts</u>[1]**

Mr. Wood was employed as the Head Coach of Dartmouth's Men's Cross Country Team from November 16, 2020 through August 19, 2022.  Doc. no. 21, ¶¶ 4, 8.  During his employment, he reported concerns in good faith that Porscha Harnden, the Director of Dartmouth Track & Field and Cross Country during his tenure, allowed students to falsify COVID-19 tests so that student-athletes who were sick and/or ineligible to practice and compete could do so anyway.  *Id.* ¶¶ 5, 7.

After Mr. Wood left Dartmouth's employment, he applied for the position of Head Coach of Track and Field at New York University ("NYU").  *Id.* ¶ 11.  As part of that application process, NYU called Dartmouth for a reference and was informed by an agent of Dartmouth that Mr. Wood had been "blacklisted", which was contrary to the truth in Mr. Wood's separation agreement that he had voluntarily resigned.  *Id.* ¶¶ 14, 17.  Mr. Wood was not hired at NYU.  *Id.* ¶ 29.

Then, on October 28, 2022, a message that "Justin Wood at Dartmouth resigned because he was associated with some inappropriate actions by coaching friends of his and was brought to light in an investigation" was posted on letsrun.com.  *Id.* ¶ 22.  The manager of letsrun.com confirmed that Ms. Harnden's husband had provided that information.  *Id.* ¶ 24.

In or around mid-February 2024, Dave Altman, a co-chair of the Friends of Dartmouth Track and Field implied that Mr. Wood suddenly resigned due to a "variety of legal matters that [he was] not privy to" and that it was a "very big surprise" to the coaches, students, and administration.  *Id.* ¶¶ 31-32.  Then, also in 2024, Dartmouth removed Mr. Wood from the team roster on the college's website for the 2021 Men's Cross-Country Team, the 2020-2021 Men's Track & Field Team, and the 2021-2022 Men's Track & Field Team.  *Id.* ¶ 38.  The website alteration interfered with Mr. Wood's application process at Tufts University, where the

---

[1] Plaintiff derives this fact section from his Amended Complaint and incorporates all facts in the Amended Complaint as if fully set forth herein.

interviewer had the Dartmouth website printed out during his interview.  *Id.* ¶ 41.

## Standard of Review

When analyzing a motion to dismiss for failure to state a claim, the Court must accept as true the well-pleaded allegations and draw all reasonable inferences therefrom in the plaintiff's favor.  *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71-72 (1st Cir. 2014).  Dismissal for failure to state a claim is not warranted unless the complaint lacks factual matter to state a claim that is plausible on its face.  *Id.*

## Argument

Mr. Wood has sufficiently stated claims for defamation, tortious interference, and retaliation pursuant to RSA 275-E.  Each cause of action and Dartmouth's arguments in favor of dismissal are addressed in turn.

### A. Count I – Defamation

In New Hampshire, a "plaintiff proves defamation by showing that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, assuming that no valid privilege applies to the communication."  *Thomas v. Tel. Publ'g Co.*, 155 N.H. 314, 321 (2007) (quoting *Pierson v. Hubbard*, 147 N.H. 760, 763 (2002)).  Language is defamatory when it "tend[s] to lower the plaintiff in the esteem of any substantial or respectable group, even though it may be quite a small minority."  *Thomson v. Cash*, 119 N.H. 371, 393 (1979).  Defamation is a state law cause of action, and the New Hampshire Supreme Court has not held that a plaintiff must identify the exact language of the alleged defamatory statement.  The "First Circuit standard" cited by Defendant is actually a recitation of Massachusetts law.  *See 3137, LLC v. Town of Harwich*, 126 F.4th 1, 15 (1st Cir. 2025) ("To properly allege defamation, a plaintiff must specifically identify the allegedly false statement.") (quoting *Kelleher*

3

*v. Lowell Gen. Hosp.*, 152 N.E.3d 126, 131 n.2 (Mass. App. Ct. 2020)).

Each of the defamatory statements alleged by Mr. Wood are sufficiently plead to demonstrate that Dartmouth's agents failed to exercise reasonable care in publishing defamatory, false statements of fact to a third party.  Each statement, and Dartmouth's arguments regarding each, are addressed in turn.

    *i.   The "blacklisting" allegation is specific enough to state a claim.*

First, New Hampshire's requirement that plaintiffs "adequately identify … the third parties to whom the statements were published" is not a requirement to name each person's full name and social security number; it's a requirement that the third party be sufficiently identified to allow the defendant to form intelligent defenses to the claims.  *Cluff-Landry v. Roman Catholic Bishop of Manchester*, 169 N.H. 670, 680 (2017).  Here, Mr. Wood sufficiently identifies the recipient as the person responsible for employment verification from NYU, and he identifies the agent of Dartmouth who made the statement.  Doc. no. 21, ¶ 50.  That is sufficient information to allow Dartmouth to verify who provided the reference for Mr. Wood to NYU, and to formulate a defense about what was said on that phone call.

Second, Mr. Wood has specifically alleged that the statement that he was "blacklisted" was false because, according to his separation agreement, he voluntarily resigned from Dartmouth and was, therefore, not "blacklisted."  "An important criterion for distinguishing statements of opinion from statements of fact is verifiability, *i.e.*, whether the statement is capable of being proven true or false."  *Automated Transactions*, *LLC v. Am. Bankers Ass'n*, 172 N.H. 528, 533 (2019).  Here, it is demonstrably false that Mr. Wood was "blacklisted" when the truth is that he voluntarily resigned from Dartmouth.

But even if this Court agrees with Dartmouth that saying someone has been "blacklisted" is an opinion, the New Hampshire Supreme Court has recognized that "even if a statement is properly described as an opinion, that does not automatically shield it from a defamation claim. After all, expressions of opinion may often imply an assertion of objective fact." *Id.* at 534 (quotations omitted). Certain statements, such as claiming a coach has been "blacklisted", cannot be protected because "even assuming *arguendo* these statements are opinions, they are clearly based upon undisclosed facts." *Id.* (quotation omitted). The "[w]ords alleged to be defamatory must be read in the context of the publication taken as a whole." *Collins v. Univ. of N.H.*, 664 F.3d 8, 19 (1st Cir. 2011) (quotation omitted). Thus, where a statement may contain "arguably hyperbolic language," it "must still be evaluated in its appropriate context to determine whether it could be reasonably construed as asserting or implying the existence of defamatory facts." *Automated Transactions*, 172 N.H. at 535.

Here, it has been alleged that Ms. Harnden, acting as an agent of Dartmouth simply described the Plaintiff as "blacklisted" to an NYU representative performing a background check. In doing so, the NYU representative was not free to form their own opinion based on facts presented. Rather, the NYU representative was provided with the term that implied an assertion of objective fact from a person who is in a position to have information on whether or not Mr. Wood has, in fact, been blacklisted.

Finally, Mr. Wood did not invite the statement that he had been "blacklisted" when he applied for a job, and NYU chose to call Dartmouth for a reference, particularly when Mr. Wood had agreed with Dartmouth that the only information it would provide upon request was that Mr. Wood had "voluntarily resigned, as well as [his] dates of employment, salary history, and job title." Doc. no. 21, ¶ 14. Rather, given this express provision in Mr. Wood's Separation Agreement on

how Dartmouth was to manage reference requests, the agreed upon neutral reference language is what Mr. Wood "invited." Dartmouth's argument to the contrary defies logic.

Moreover, when the New Hampshire Supreme Court held that invited slander is not actionable, it was within the context of a plaintiff who "hir[ed] a reference company to find out what the [school] was stating about her." *Cluff-Landry*, 169 N.H. at 678. Each of the cases cited by the New Hampshire Supreme Court in that decision were cases in which the plaintiff's agent posed as a "third party" seeking information, where the plaintiff specifically instructed the third party to seek the information, or where the plaintiff showed the defamatory statements to a third party himself. *Id.* at 679 (collecting cases[2]). There are no allegations in Mr. Wood's complaint that he asked NYU to call Dartmouth for a reference; rather, he simply applied for a position that required a reference check. Doc. no. 21, ¶ 13. It cannot be true that Mr. Wood invites defamation simply by applying for a job and expecting Dartmouth to comply with the neutral reference provision in his separation agreement.

Mr. Wood has sufficiently alleged that Ms. Harnden's statement that he had been "blacklisted" was a verifiably false, damaging, uninvited defamatory statement of fact, and his

---

[2] *See, e.g.*, *Kelewae v. Jim Meagher Chevrolet, Inc.*, 952 F.2d 1052, 1054, 1055 (8th Cir. 1992) (holding that when plaintiff requested his stepson and a friend each telephone the defendant posing as a prospective employer, the defendant's "allegedly defamatory statements ... cannot form the basis of a defamation suit because the statements were solicited by agents of the plaintiff"); *Litman v. Mass. Mut. Life Ins. Co.*, 739 F.2d 1549, 1560 (11th Cir. 1984) (when the plaintiff invited the alleged defamation, the statement is not a "publication" under Florida law); *Long v. Quorum Health Resources, LLC*, No. 2:13-CV-189, 2014 WL 1795156, at *7 (D. Vt. 2014) (explaining that "'invited defamation,' or the issuance of a defamatory statement wherein the injured party precipitated the statement's release, is not actionable" (quotation omitted)); *Martinez v. New England Med. Ctr. Hosps.*, 307 F. Supp. 2d 257, 263, 269 (D. Mass. 2004) (granting summary judgment to the defendant on plaintiff's defamation claim in part because she invited the defendant's statements by having a friend pose as a prospective employer seeking references); *Beck v. Tribert*, 711 A.2d 951, 959–60 (N.J. App. Div. 1998) (concluding that the trial court did not erroneously dismiss plaintiff's slander claim when plaintiff's friends posed as prospective employers; "plaintiff should not be permitted to sue for the injury he ... invited" (quotation and brackets omitted)); *Ga. Power Co. v. Busbin*, 289 S.E.2d 514, 515 (Ga. 1982) (holding that there can be no recovery for invited libel; "[i]t is enough that the complainant requests or consents to the presence of a third party and solicits the publication of matter which he knows or has reasonable cause to suspect will be unfavorable to him"); *Pressley v. Continental Can Co., Inc.*, 250 S.E.2d 676, 678 (N.C. App. 1979) (stating that "[a] publication of a libel, procured or invited by the plaintiff, is not sufficient to support an action for defamation").

allegation thereof should not be dismissed.

   *ii.   There is no absolute privilege for the statements to letsrun.com.*

   Ms. Harnden, an agent of Dartmouth, relayed defamatory information regarding Mr. Wood to her husband, who turned around and relayed that information to a third party: letsrun.com. Dartmouth alleges that Ms. Harnden's publication to her husband was absolutely privileged in accordance with Restatement (2d) of Torts § 592.  Doc. no. 22-1, at 10.  Though, as Dartmouth acknowledges, the New Hampshire Supreme Court has not expressly adopted that portion of the Restatement.  Rather, the New Hampshire Supreme Court has recognized that "[t]he marital privilege is not a blanket immunity," and that in New Hampshire, "[a] person claiming a privilege against disclosure waives the privilege if the person . . . knowingly and voluntarily discloses . . . any significant part of the privileged matter." *State v. Wilkinson*, 136 N.H. 170, 178 (1992) (citing N.H. R. Evid. 510).  In any event, even if Ms. Harnden's statements to her husband are privileged, the Restatement does not protect his re-publication to letsrun.com.

   In fact, other jurisdictions have held that "a person who supplies defamatory material to another for publication can be liable for defamation." *Roe v. Patterson*, 707 S.W.3d 94, 98 (Tex. 2025).  In so holding, the Texas Supreme Court determined that in order "[t]o recover for defamation, a plaintiff must identify the defamatory statements made and further demonstrate that the defendant was a source of those false statements." *Id.* at 99.  To do so, "[t]he plaintiff may meet this burden through direct or circumstantial evidence," which includes "proof that the defendant made the same defamatory statement to others, that the defendant had unique or personal knowledge of the defamatory content and its details, or that the publishers relied on the defendant to support the truthfulness of the allegedly defamatory statements." *Id.* at 101.  As the Director of Dartmouth's Track & Field and Cross-Country Program, Ms. Harnden would have "unique or

7

personal knowledge" of any defamatory content regarding a former employee and would be a source that a person would rely on for the truth of statements related to former employees of the program.

Dartmouth attempts to argue that Ms. Harnden's husband would have to be acting as an agent of Dartmouth in order for this statement to be actionable, but Mr. Wood has sufficiently alleged that the statement was "published at Ms. Harnden's direction through her husband." Doc. no. 21, ¶ 26. Mr. Wood has also sufficiently alleged that Ms. Harnden did so within the scope of her employment as a retaliatory act for which Dartmouth is liable. *See* doc. no. 21, ¶ 28; *see also Pierson*, 147 N.H. at 766 ("An employee's conduct falls within the scope of his or her employment if: (a) it is of the kind he or she is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master."). At minimum, whether Ms. Harnden was acting within the scope of her employment is a question of fact reserved for a later stage in these proceedings.

Because spousal privilege does not protect Ms. Harnden's husband's statements to a third party, and because Mr. Wood sufficiently alleges that he made those defamatory statements at Ms. Harnden's direction, as an agent for Dartmouth, the defamation claim regarding this statement should not be dismissed.

*iii. Mr. Altman's statements are sufficient to state a claim.*

Mr. Altman made statements as the co-chair of the Friends of Dartmouth Track and Field ("Friends"), a group which routinely conveys Dartmouth's official positions to alumni, donors, and the larger community. Doc. no. 21, ¶¶ 35-36. As the Director of the program, Ms. Harnden had a relationship with Friends, which is a matter of public record. *Id.* ¶ 37. Mr. Wood sufficiently alleges that Ms. Harnden communicated with Friends as part of her employment with Dartmouth,

8

including any communications regarding Mr. Wood's departure.

Further, as outlined in the Amended Complaint, Mr. Wood has sufficiently alleged that the "thrust" of Mr. Altman's statements were not that Mr. Wood resigned. Rather, Mr. Altman's statements link Mr. Wood's resignation to "a variety of legal matters" involving "privacy issues" which caused the other coaches to be "beyond frustrated and upset with what he did." *Id.* ¶¶ 31-32. Those statements, considered in "the context of the publication as a whole," paint Mr. Wood in a negative light. *Nash v. Keene Publ'g Co.*, 127 N.H. 214, 219 (1985). When "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts," courts have recognized a cause of action for defamation by implication. *Lewis v. Abramson*, 673 F. Supp. 3d 72, 86 (D.N.H. 2023) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008); *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007); *see also* Smolla, Law of Defamation § 4:16 (2d ed. 2023) (collecting cases)). *See also Howard v. Antilla*, 191 F.R.D. 39, 44 & n.6 (D.N.H. 1999) (acknowledging defamation by implication cause of action); *Duchesnaye v. Munro Enters., Inc.*, 125 N.H. 244, 250 (1984) (recognizing that a defamation claim could be premised on a defamatory implication). *Cf. Automated Transactions*, 172 N.H. at 533 (holding that an opinion is actionable if it implies an assertion of an objective fact).

Here, both true and false elements of Mr. Altman's statements created an overall defamatory "thrust" that is actionable.

*iv. The removal of Mr. Wood from the online roster constituted defamation by omission.*

As alleged in the Amended Complaint, Dartmouth's removal of Mr. Wood from the online roster for three years in which he was serving as either Head Coach or Assistant Head Coach created a defamatory inference in actuality when it cost him at job opportunity at Tufts University.

9

Dartmouth's inclusion of the website screenshots, showing that Mr. Wood's image remains on the website, but his name is no longer listed, demonstrates even more clearly the effort Dartmouth made to erase Mr. Wood's credit for the team's accomplishments in any given year, and created a reason for a reasonable person to question why Mr. Wood's name had been removed from the roster when he is present in the team photo.

Some jurisdictions have recognized defamation by omission as a type of defamation by implication where a material omission of facts implied defamatory conduct by the plaintiff. *See, e.g.*, *Mohr v. Grant*, 108 P.3d 768, 776 (Wash. 2005) ("In a defamation by omission case, the plaintiff must show with respect to the element of falsity that the communication left a false impression that would be contradicted by the inclusion of omitted facts."); *Schoff v. York Cty.*, 761 A.2d 869, 872 (Me. 2000) ("[T]rue statements can form the basis of liability for defamation when the omission of additional information renders the true statement false and defamatory.").

The removal of Mr. Wood's name from the roster, when other former coaches remain, creates the inference that he left on bad terms, which is defamatory. Accordingly, Mr. Wood's defamation claim, in relation to his removal from the online rosters should not be dismissed.

## B. Count III – Tortious Interference

First, Mr. Wood's allegations regarding the lost job opportunity at Tufts are not part of his tortious interference claim. Rather, the harm there was was a foreseeable consequence of Dartmouth's violation of RSA 275-E, discussed in Section C below.

Second, Mr. Wood has sufficiently stated a claim for tortious interference with regard to NYU. In New Hampshire, to "prove either tortious interference with a prospective agreement or tortious interference with a contractual relationship, the plaintiff must prove the following: that the plaintiff had a contractual relationship with the [a third party]; that the defendants knew of the

contractual relationship between [the third party] and the plaintiff; and the defendants wrongfully induced [the third party] to breach [the] agreement with the plaintiff." *Montrone v. Maxfield*, 122 N.H. 724, 726 (1982). A "prospective contract need not be reduced to a formal, written instrument. Instead, all that is required is a promise, or the reasonable expectation of a promise, creating a duty recognized by law." *Heritage Home Health, Inc. v. Capital Region Health Care Corp.*, Civ. No. 95-558-JD, 1996 WL 655793, at *3 (D.N.H. Oct. 1, 1996) (citations omitted).

The Court's limitation on seeking relief for interference with "already existing relationships" must be looked at in the context of the case in which that limitation was made. In *Heritage Home Health*, the case in which this Court made that proclamation, the plaintiff brought a tortious interference claim "based solely on plaintiff's potential for capturing a share of a given market." *Id.* at *4. That is a much more speculative proposition than Mr. Wood's application with NYU for employment, which had progressed to the round of seeking references from former employers. This case is much more similar to *Baker v. Dennis Brown Realty, Inc.*, 121 N.H. 640 (1981), in which the New Hampshire Supreme Court held that the potential purchaser of a home could bring a claim for intentional interference with prospective contractual relationship, even though her offer to purchase was never accepted. *See id.* at 643-44. Here, Mr. Wood had a "reasonable expectation of a promise" from NYU, and a relationship with NYU which provided a "reasonable expectation of economic advantage". That is enough to state a claim for tortious interference with a prospective economic relationship.

Additionally, Mr. Wood has sufficiently alleged that Dartmouth's interference was wrongful. There is no legitimate reason for Ms. Harnden to tell NYU that Mr. Wood had been "blacklisted", particularly when there was a binding agreement in place which instructed her to tell Mr. Wood's prospective employers only that he had voluntarily resigned, and to provide his

11

dates of employment, salary history, and job title.  The only possible reason Ms. Harnden could have had for making that statement was to harm Mr. Wood's chances at obtaining employment from NYU.  That is the definition of wrongful.

Mr. Wood has sufficiently stated a claim for tortious interference with a prospective economic relationship, and Dartmouth's motion to dismiss that claim should be denied.

### C.  Count IV – Retaliation Pursuant to RSA 275-E

Dartmouth argues that Mr. Wood's retaliation claim brought pursuant to RSA 275-E should be dismissed because he was no longer an employee at the time of Dartmouth's alleged retaliatory acts.  That is a misreading of *In re Northeast Rehab. Hosp.*, 149 N.H. 83 (2003).  In that case, the New Hampshire Supreme Court held that "RSA 275-E:2, I(a) protects only persons who are employed by the employer at the time they report a violation of law or rule …." *Id.* at 86.  The Court did not hold that employers could not retaliate against someone post-employment, only that the employee had to be employed at the time of the protected activity.

In fact, this Court has specifically held that post-employment retaliation could be actionable if it is in retaliation for a protected report made while still an employee.  *Lieber v. Marquis Mgmt., LLC*, 691 F. Supp. 3d 334, 347 (D.N.H. 2023) ("In other words, with this partial dismissal of the WPA claim, the court does not curtail Lieber's ability to challenge the defendants' conduct in response to his protected activity—including the defendants' purported refusal to provide him with a reference after his termination, to the extent this is found to be retaliation for protected activity that Lieber engaged in <u>during</u> his employment.").

That is exactly the case here.  Mr. Wood is alleging that Dartmouth's post-employment retaliation is a result of his good faith reports, during his employment, regarding the falsification of COVID-19 test results.  That is actionable pursuant to this Court's decision in *Lieber*.

Therefore, Count IV should not be dismissed.

## Conclusion

In accordance with the foregoing, Mr. Wood respectfully requests that this Honorable

Court deny Dartmouth's Motion to Dismiss Counts I, III, and IV.

Respectfully submitted,
JUSTIN WOOD

By his attorneys,
SHAHEEN & GORDON, P.A.

Dated: January 14, 2026                    _/s/ Olivia F. Bensinger_____
Olivia F. Bensinger, Esq. (NH Bar #274145)
Shaheen & Gordon, P.A.
107 Storrs Street, P.O. Box 2703
Concord, NH 03302
(603) 225-7262
obensinger@shaheengordon.com

AND

GORDON LAW GROUP, LLP

_/s/ Benjamin Flam_____
Philip Gordon, Esq. (*Pro hac vice*)
Benjamin Flam, Esq. (*Pro hac vice*)
Gordon Law Group, LLP
585 Boylston Street
Boston, MA 02116
(617) 536-1800
pgordon@gordonllp.com
bflam@gordonllp.com

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was served upon all parties through the Court's electronic filing system.

Dated: January 14, 2026                    _/s/ Olivia F. Bensinger_____
Olivia F. Bensinger