UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Justin Wood

v. Case No. 25-cv-304-SE
Opinion No. 2026 DNH 135

Trustees of Dartmouth College

**O R D E R**

Plaintiff Justin Wood was Dartmouth University's Men's Cross-Country coach for nearly two years, until August 2022. He alleges that Porscha Dobson Harnden, who served as the Director of Dartmouth Track & Field and Cross Country during his tenure and for roughly two years thereafter, made defamatory remarks about him to third parties after he left. Wood originally brought suit against Trustees of Dartmouth College (Dartmouth) and Harnden, alleging claims for defamation,[1] breach of contract, and tortious interference in a prospective employment relationship. Wood then voluntarily dismissed the claims against Harnden individually, doc. no. 16, and filed an amended complaint naming only Dartmouth as the defendant, through an agency theory. Doc. no. 21. His amended complaint asserts the same three claims and adds a fourth for violation of New Hampshire's Whistleblowers' Protection Act, N.H. Rev. Stat. Ann. (RSA) § 275-E:2. Dartmouth moves to dismiss the defamation, tortious interference, and RSA 275-E:2 claims under Rule 12(b)(6). Doc. no. 22. Wood objects. Doc. no. 23.

[1] The amended complaint styles this count as "libel per se and slander per se," but both parties refer to it as "defamation" in their briefing as the court can analyze the two claims jointly. See McCarthy v. Manchester Police Dep't, 168 N.H. 202, 210 (2015).

## Standard of Review

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

To test a complaint's sufficiency, the court must first identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio–Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678 (alterations omitted)). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations and then determine if the claim is plausible. See id. Only then can the court determine whether the "combined allegations, taken as true, . . . state a plausible, not a merely conceivable, case for relief." Id. (quotation omitted).

## Background

Consistent with this standard of review, the court assumes that the following facts taken from the amended complaint are true. Dartmouth hired Wood as the Head Coach of its Men's Cross-Country Team on November 16, 2020. In her capacity as the Marjorie & Herbert Chase '30 Director of Dartmouth Track & Field and Cross Country, Harnden was Wood's supervisor. During his employment, Wood reported and objected to certain of Harnden's practices, including allegedly falsifying COVID-19 testing documentation to allow sick athletes to practice and

compete, and potential admissions fraud. On August 19, 2022, Wood and Dartmouth entered into a separation agreement and a general release agreement (separation agreement).

The separation agreement contained a non-disparagement clause and a neutral reference clause. The non-disparagement clause reads:

> Employer agrees that it will not disparage or encourage or induce others to disparage Employee. For the purposes of this Agreement, the term "disparage" includes, without limitation, without limitation, any statement, written or oral, public or private, or engage in any other actions which disparages or discredits Employee to the press and/or media, any individual or entity with whom Employee had or has a business relationship which would adversely affect in any manner his reputation.

Doc. no. 21, ¶ 10.[2] The neutral reference clause reads: "Employer will confirm, upon request to the Employer, that Employee voluntarily resigned, as well as Employee's dates of employment, salary history, and job title." Id., ¶ 14.

Wood alleges that Dartmouth, both through its own conduct and Harnden's actions, defamed him and engaged in multiple breaches of the separation agreement, interfering with his ability to obtain employment. Wood describes four specific acts by Harnden or Dartmouth that give rise to his claims.

## I. The September 2022 NYU Reference Check

After his employment with Dartmouth ended, Wood became aware of an opening for a track and field coaching position at New York University. NYU had previously offered Wood the head coaching position in 2014. In September 2022, he met with NYU's athletic director and submitted a formal application, which required a reference check. The "individual at NYU who was managing the background check" called Dartmouth to verify Wood's employment. Doc. no.

---

[2] The court quotes the provision verbatim, including several apparent grammatical errors.

21, ¶ 17. Wood learned on December 7, 2022, that Harnden (or someone at her direction) responded that Wood had been "blacklisted." Id.

II. The October 2022 "Letsrun.com" Post

In October 2022, the following post appeared on a message board on "Letsrun.com," a blog that is a source of information for the running community: "Heard through the grapevine that Justin Wood at Dartmouth resigned because he was associated with some inappropriate actions by coaching friends of his and was brought to light in an investigation. Just thought this was worth sharing." Doc. no. 1, ¶ 22. Wood called the manager of the blog to request removal of the post. The manager shared that he had spoken with Harnden's husband regarding the post.

III. The February 2024 Statement By Dave Altman

Dave Altman is the co-chair of "Friends of Dartmouth Track and Field" (Friends), an organization that Dartmouth uses as a communication arm with alumni, donors, and the community. In February 2024, Altman responded to questions regarding Wood's departure. He stated that it was "exclusively driven" by Wood, that "he resigned" and "quit," and that "there are a variety of legal matters that [Altman] is not privy to" and "all kinds of privacy issues there." Doc. no. 21, ¶ 31. Altman further stated that "the college did not terminate Justin" and that "he voluntarily resigned." Id. He went on to describe Wood's resignation as a "shock" to students and a "very big surprise" to coaches and the administration. Id., ¶¶ 31-32. He said that "the rest of the coaches were beyond frustrated and upset with what he did." Id., ¶ 32. Wood alleges that these statements were made at Harnden's direction or encouragement.

IV. The 2024 Removal Of Wood's Name And Image From Online Rosters

At some point in 2024, Dartmouth removed Wood's name from the online rosters for the 2021 Men's Cross-Country team (for which he was the head coach), and the 2020-2021 and 2021-2022 Men's Track & Field Team (for which he was the assistant coach). During an interview with Tufts University, Wood's interviewer had printed the relevant pages from Dartmouth's website. His missing name became an issue because Wood's wife, who was a volunteer, had a profile while Wood did not. Dartmouth's website continues to list coaching positions for other former employees Dartmouth terminated.

## Discussion

Wood's amended complaint includes four counts: defamation (Count I), breach of contract (Count II), tortious interference in prospective employment relationship (Count III), and retaliation in violation of RSA 275-E:2, New Hampshire's Whistleblowers' Protection Act (WPA) (Count IV). Doc. no. 21. Dartmouth moves to dismiss all counts except for Count II. Doc. no. 22.

I. Defamation (Count I)

Dartmouth presses a number of defenses to Count I. To allege a defamation claim, a plaintiff must allege facts that show that "the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party," assuming that no valid privilege applies to the statement. Cluff-Landry v. Roman Cath. Bishop of Manchester, 169 N.H. 670, 678 (2017); Sanguedolce v. Wolfe, 164 N.H. 644, 645-46 (2013). Statements are defamatory "if they hold the plaintiff up to contempt, hatred, scorn or ridicule, or

tend to impair his standing in the community." Thomas v. Tel. Publ'g Co., 155 N.H. 314, 338 (2007). "The complained-of language must tend to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority." Sanguedolce, 164 N.H. at 646 (quotations omitted). Further, the court must determine at the motion to dismiss stage "whether the language in question could reasonably have been read to defame the plaintiff," considering the statements "in the context of the publication as a whole." Lewis v. Abramson, 673 F. Supp. 3d 72, 86 (D.N.H. 2023) (quotations omitted). The court addresses Dartmouth's arguments as to each alleged defamatory action separately.

A. The September 2022 NYU Reference Check

Dartmouth presents three arguments regarding NYU's reference check in September 2022. It argues that this allegation does not state an adequate claim for defamation because it does not specify to whom the statement was made, that "blacklisted" is merely an opinion or hyperbole that it is not objectively provable as false, and that Wood invited the remark rendering it inactionable. The court considers each argument in turn.

1. Lack of specificity

Dartmouth argues that Wood must allege exactly who said the defamatory statement and who received it, and that Wood fails to do so because the amended complaint does not identify the NYU representative who received the statement.

Wood must specifically identify the defamatory statements, the person who made the statements, when the statements were made, and to whom the statements were made. Cluff-Landry, 169 N.H. at 680. The specificity requirement is met regarding the person receiving the

statement when the complaint is specific enough to afford the defendant with sufficient notice to enable it to defend itself. See Chalifoux v. Proto Labs, Case No. 23-cv-23-SE, 2023 WL 9375622, at *6 (D.N.H. Dec. 28, 2023), report and recommendation adopted, No. 23-CV-23-SE, 2024 WL 245040 (D.N.H. Jan. 23, 2024). Here, Wood's allegations meet the specificity requirement because he identifies a specific recipient, namely an NYU representative who made reference check phone calls. While he does not identify this person by name, his complaint provides adequate information to afford Dartmouth sufficient notice to enable it to defend itself. See Linell v. New York City Dep't of Educ., Case No. 15-cv-5085 (CBA) (MDG), 2017 WL 880853, at *1, *3 (E.D.N.Y. Mar. 3, 2017) (finding that a statement allegedly published to school staff members without identifying any recipients by name was sufficiently specific in regards to who received the defamatory statement to enable the defendant to defend itself); Bishop v. Costa, 495 F. Supp. 2d 139, 141 (D. Me. 2007) (holding that the specificity requirement was met despite the plaintiff only generally identifying that specified agencies and unnamed third-party individuals within those agencies received the allegedly defamatory statements). Thus, Wood's defamation claim regarding the NYU reference check is sufficiently specific to defeat a motion to dismiss.

2. Mere opinion or hyperbole

Dartmouth argues that Wood fails to allege any facts from which the court could infer that Harnden's comment went beyond a statement of opinion or hyperbole. Further, it argues that a statement that a person had been "blacklisted" is inactionable because it is a vague term that is not objectively provable as false and so it cannot hold Wood up to contempt or ridicule.

"[C]ourts must take special care to impose liability only for those statements that, viewed

in context, 'reasonably would be understood to declare or imply provable assertions of fact,' and not those statements that simply offer one of several possible interpretations of disclosed facts." Lewis, 673 F. Supp. 3d at 90 (quoting Piccone v. Bartels, 785 F.3d 766, 771 (1st Cir. 2015)). Specifically, "the court [must] examine the statement in its totality in the context in which it was uttered or published." Amrak Prods. v. Morton, 410 F.3d 69, 72-73 (1st Cir. 2005). Wood alleges that Harnden's statement that he had been "blacklisted" was made in a very specific context: a reference check from a former employer. The clause of the separation agreement requiring Dartmouth to provide a neutral reference with confirmation of Wood's voluntary resignation further adds to the context. See doc. no. 21.

While "blacklisted" alone may be opinion-based or hyperbolic, crediting as true Wood's allegations and giving him every reasonable inference, the statement is both defamatory and false when viewed in context. In these circumstances, the statement that Wood had been "blacklisted" would be reasonably understood by the person seeking the reference check to declare or imply a provable assertion of fact that Dartmouth had terminated Wood and determined that it would not rehire him, and not merely a matter of Harnden's opinion. The statement directly contradicts the assertions in the amended complaint that Wood resigned voluntarily and also contravenes the facts included in the neutral reference provision of the separation agreement. Further, giving Wood every reasonable inference and in the context of a reference check, declaring that Dartmouth had "blacklisted" Wood holds him up to contempt or ridicule and lowers his esteem in the running community and the community of potential employers, specifically at NYU. See Thomas, 155 N.H. at 338.

3. Wood invited the remark

Dartmouth's final argument with respect to this portion of Wood's defamation claim is that he invited the remark by applying for a position which required a reference. Dartmouth argues that Wood has not stated a claim because, relying on Cluff-Landry, "a plaintiff may not bring a claim for slander when she invites or procures the very statements that form the basis of the claim." 169 N.H. at 679.

Dartmouth's reliance on Cluff-Landry is misplaced. In that case, a similar reference check was not actionable because the plaintiff had specifically hired the reference company to perform a call to gather information about what her former employer was sharing with prospective employers. Id. at 679-80 (collecting cases in which people posed as prospective employers). Here, Wood simply applied for a job that required a reference check. He did not hire NYU to investigate if Dartmouth would make defamatory statements about him.

Further, based on the neutral-reference clause, the specific "blacklisted" statement was in no way invited because Wood likely understood that Dartmouth, as required by the separation agreement, would solely confirm that he "voluntarily resigned, as well as [his] dates of employment, salary history, and job title." See doc. no. 21, ¶ 14. Invited slander exists when a plaintiff knew, or should have known, that an inquiry would solicit the alleged defamatory statement. See, e.g., Long v. Quorum Health Res., LLC, No. 2:13-CV-189, 2014 WL 1795156, at *8 (D. Vt. May 6, 2014), aff'd sub nom. Long v. Quorum Health Res., L.L.C., 590 F. App'x 103 (2d Cir. 2015); Georgia Power Co. v. Busbin, 249 Ga. 180, 289 S.E.2d 514, 515 (Ga. 1982) ("It is enough that the complainant requests or consents to the presence of a third party and solicits the publication of matter which he knows or has reasonable cause to suspect will be unfavorable to him."); Hill v. Allianz Life Ins. Co. of N. Am., No. 614CV950ORL41KRS, 2016

WL 872936, at *7 (M.D. Fla. Feb. 17, 2016), aff'd, 693 F. App'x 855 (11th Cir. 2017) ("As noted, it is sufficient to constitute invited defamation if there is reason for the consenting party to know that the publication may contain defamatory statements.") (citing Chi v. Loyola Univ. Med. Ctr., No. 10 C 6292, 2013 WL 422868, at *7 (N.D. Ill. Feb. 1, 2013) (holding that where the plaintiff alleged the defendant had a history of making false or biased statements with relation to his employment, "any reasonable fact finder would conclude that [the plaintiff] had reason to know that defendants might make negative and defamatory statements" when responding to requests)). Under these circumstances, Wood had no reason to know that the reference check would include a statement that he had been "blacklisted." Thus, Wood adequately pleads that he did not invite the "blacklisted" comment.

The allegations contained in the amended complaint are sufficient to defeat Dartmouth's motion to dismiss Count I for defamation based on the NYU reference check.

B. The October 2022 "Letsrun.com" Blog Post

Dartmouth argues that the comment on the "Letsrun.com" blog post provides an insufficient basis for Wood's defamation claim because the complaint does not adequately allege that Harnden was within the scope of her agency relationship with Dartmouth when she made the statement to her husband. Alternatively, it argues that Wood cannot maintain his claim based on the blog because the marital privilege applies. Wood argues that the marital privilege does not protect against Harnden's husband's re-publication of the allegedly defamatory statement, and since he alleges that this was published at Harnden's direction, he does not need to plead that her husband was Dartmouth's agent.

The agency relationship is a question of fact, requiring "(1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act, and (3) the understanding that the principal is to exert some control over the agent's actions." Vandemark v. McDonald's Corp., 153 N.H. 753, 760-61 (2006). This relationship exists "only if there has been a manifestation by the principal to the agent that the agent may act on [its] account." Richardson v. Sibley, 101 N.H. 377, 379 (1958) (adopting Restatement of Agency § 15). "Control by the principal does not mean actual or physical control at every moment; rather, it turns upon the principal manifesting some continuous prescription of what the agent shall or shall not do." Dent v. Exeter Hosp., Inc., 155 N.H. 787, 792 (2007).

Here, Wood did not name Harnden as a defendant in his amended complaint. Thus, the question is not whether Harnden's husband acted as her agent in publishing the statements on the message board. Rather, the court must consider whether Wood has alleged any facts to support his claim that Harnden's husband acted as Dartmouth's agent. He has not. Wood has alleged no facts at all concerning Dartmouth's relationship with Harnden's husband.

Wood argues that he need not allege sufficient facts to establish that Harnden's husband acted as an agent of Dartmouth because he has alleged sufficient facts to establish that Dartmouth is liable, under respondeat superior, for Harnden's statements to her husband, which he then republished at her direction.[3] Doc. no. 23 at 8. Here, too, he fails. Setting aside Wood's conclusory statement that "Harnden acted within the scope of her employment and as an agent of

---

[3] It is far from clear whether Wood's amended complaint alleges that Harnden's husband posted the statements on the blog, supplied the information to someone else who posted the statements, or merely confirmed the accuracy of the statements after someone else posted them. This mystery is not germane to the court's analysis. Wood adequately alleges that, at some point, Harnden's husband made statements to the blog's manager that, at least, confirmed the content of the post.

Dartmouth," doc. no. 21, ¶ 50, which the court must, Wood does not allege that Harnden shared this information with her husband within the scope of her employment. While it is true that an employer may be vicariously liable for the acts of its employee if the employee was acting within the scope of her employment when she committed a tortious act, the act is not within the scope of the tortfeasor's employment unless it: "(1) it is of the kind she is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer." Porter v. City of Manchester, 155 N.H. 149, 152 (2007). Wood has not alleged facts that could satisfy any of the three elements. Because Wood has failed to allege sufficient facts to establish agency or vicarious liability, the "letsrun.com" blog post does not allege a plausible defamation claim.[4]

C. The February 2024 Statements by Altman

Dartmouth argues that Wood's claim concerning Altman's statements fails because it is not adequately specific, Altman was not Dartmouth's agent, and even if he was, the statements regarding Wood's resignation are objectively true based on the separation agreement and the allegations in the amended complaint. Wood responds that he has adequately alleged that Altman was Dartmouth's agent, and that, in the context of the publication as a whole, his statements had a defamatory "thrust" by implication.

As previously discussed, Wood cannot state a claim for defamation unless he specifically identifies the defamatory statements, the person who made the statements, when the statements

[4] Because the amended complaint does not allege adequate facts to support an inference that Harnden's husband was Dartmouth's agent or that Harnden was acting in the scope of her agency relationship with Dartmouth at the time she allegedly made these statements, the court need not address the parties' arguments regarding the martial privilege.

were made, and to whom the statements were made. Cluff-Landry, 169 N.H. at 680. Though he alleges sufficient facts regarding the statements, the person who made the statements, and when the statements were made, Wood does not allege to whom the statements were made other than to say the "false statements were made verbally to third parties." Doc. no. 21 at 33. This is insufficient. See Cluff-Landry, 169 N.H. at 680 (citing McGuire v. Adkins, 284 Ala. 602, 226 So.2d 659, 661 (1969) (concluding that a slander claim is insufficient where the complaint fails to state where and to whom the slander was published)).[5]

Further, assuming without deciding that the amended complaint adequately alleges that Altman was Dartmouth's agent in some capacity and that Dartmouth authorized him to make statements on its behalf, there are no allegations that he made the allegedly defamatory statements within the scope of that agency or with a purpose to serve Dartmouth, or that any person relied on his apparent authority. See Alexander v. Fujitsu Bus. Commc'n Sys., Inc., 818 F. Supp. 462, 468 (D.N.H. 1993). There are simply insufficient allegations to state a defamation claim based on Altman's alleged comments.

D. The 2024 Removal of Wood's Name and Image from Online Rosters

Dartmouth argues that removing Wood's name and image from its website was not defamatory because it did not publish, but rather removed, information. Wood's name, title, and picture still appear on its website for at least two of the rosters. In his objection, Wood argues

[5] To the extent that Wood intended to allege in the alternative that Dartmouth was liable for statements Harnden may have published to Altman, that claim would also fail for lack of specificity. Wood does not allege what Harnden might have said or when she might have said it. More, he fails to allege any non-conclusory facts capable of establishing that Harnden's potential comments to Altman were actuated, in any part, by a purpose to serve Dartmouth. See Porter, 155 N.H. at 152.

that his claim is for defamation by omission, a breed of defamation by implication. He argues that removing his name implied that he left on bad terms or that he lied about his coaching experience during an interview with Tufts University, especially when other former coaches are still listed on the roster.

Preliminarily, Dartmouth furnished screenshots of certain rosters from its website in its motion to dismiss.[6] Each screenshot shows a team photo and, underneath the photo, a list of the names of the players and coaches who are depicted in the photo, including Wood. See doc. nos. 22-3 and 22-4. Dartmouth argues that this information sufficiently undermines Wood's defamation claim to require dismissal. The court disagrees. Dartmouth furnished only screenshots for two of the three teams referenced in the amended complaint. But even if Dartmouth had furnished a screenshot of the team photo of the additional roster included in Wood's allegations, the screenshots would not warrant dismissal of this portion of Wood's defamation claim. The screenshots show that Dartmouth's website included, in addition to the team photos with identifying names, a separate list of all of the runners and coaches for each team, including their contact information and links to full biographies. Wood is not included. See id. Whether Wood's presence in the photographs and accompanying list of those pictured sufficiently undermines this portion of his defamation claim is a question better suited for judgment at a later stage. The allegations in the amended complaint and the screenshots are insufficient, alone, to decide that issue.

---

[6] Since Dartmouth's online rosters are "integral to or explicitly relied upon in the complaint, even though not attached to the complaint" the court may consider them at the motion to dismiss stage. Clorox Co. v. Proctor & Gamble Commer. Co., 228 F.3d 24, 32 (1st Cir. 2000). Dartmouth's alleged alteration of the website rosters is a specific instance that Wood emphasizes in making his claims, and thus these are both integral to and specifically relied upon in the amended complaint. See id.

Dartmouth also argues that it cannot be liable for defamation because it did not publish information, and instead solely removed it. But both the New Hampshire Supreme Court and this court have recognized a claim for defamation by implication. See Lewis, 673 F. Supp. 3d at 86 (referencing Duchesnaye v. Munro Enters., 125 N.H. 244, 250 (1984)). Such a claim occurs when a "defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." Id. (quotation omitted); Hynes v. New Hampshire Democratic Party, 175 N.H. 781, 791–92 (2023).

Dartmouth's public roster presents information about the members of its team each year. Wood's absence from the roster plausibly implies that he is lying about his employment or that he left on bad terms, either of which could lower him in the esteem of the cross-country community, or in the community of his prospective employers. Taken in the context of the publication as a whole, in which even volunteers and individuals who were terminated by Dartmouth remain listed on the online roster, Wood's removal creates a defamatory implication. Thus, his amended complaint presents sufficient facts to assert a plausible claim for relief based on Dartmouth's website. See Duchesnaye, 125 N.H. at 250.

The motion to dismiss Wood's defamation claim is denied as to the allegations regarding the NYU reference check and the Dartmouth website. It is granted as to the "Letsrun.com" blog post and Altman's statements.

II. Tortious Interference (Count III)

Wood's claim for tortious interference is based on the "blacklisted" comment during the NYU reference check.[7] Dartmouth argues that Wood has failed to state a claim for tortious interference with prospective contractual relations because he has not alleged an existing economic relationship with NYU. They also argue that the "blacklisted" statement was not a wrongful act that could constitute improper interference. Wood responds that he had a reasonable expectation of a promise of employment from NYU sufficient to state a claim for tortious interference with a prospective economic relationship, and that the "blacklisted" statement was wrongful because there was no legitimate reason for making the statement besides depriving him of potential employment.

A claim for tortious (or intentional) interference with prospective contractual relations exists when "one who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another," causing harm to the other." Baker v. Dennis Brown Realty, 121 N.H. 640, 644 (1981). To prove the claim, Wood must prove that 1) he had an economic relationship with NYU, 2) Dartmouth knew of this relationship, 3) Dartmouth intentionally and improperly interfered with the relationship; and 4) he was damaged by Dartmouth's interference. See Wilcox Indus. Corp. v. Hansen, 870 F. Supp. 2d 296, 306 (D.N.H. 2012). Further, to meet the first element, a plaintiff must seek relief based on a defendant's interference with an "already existing relationship that gives rise to a reasonable expectation of economic advantage" which, does not require a written contract, but only "a

---

[7] Wood's prayer for relief indicates that he is seeking to recover "financial losses stemming from the lost job opportunity at NYU and Tufts." Doc. no. 21 at 14. Wood clarified in his objection to the motion to dismiss that he did not intend to allege a claim for tortious interference ground on the Tufts facts and intended only to seek such damages as compensation under RSA 275-E. Doc. no. 23 at 10.

promise, or the reasonable expectation of a promise, creating a duty recognized by law." Heritage Home Health v. Capital Region Health Care Corp., No. CIV. 95-558-JD, 1996 WL 655793 (D.N.H. Oct. 1, 1996).

Wood adequately pleads that he had an economic relationship with NYU. While participation in a hiring process may not always, or even typically, allege a sufficient economic relationship to state a claim for intentional interference with prospective contractual relations, Wood's specific allegations are sufficient when the court gives Wood every reasonable inference. Based on the amended complaint, NYU had offered Wood the same position eight years earlier in 2014, Wood met with NYU's Athletic Director and Head Cross Country/Track & Field Coach to discuss the position and related expectations on October 3, 2022, and Wood had reached the reference-check stage. These facts plausibly allege that Wood had a reasonable expectation of an employment relationship with NYU. See Lin v. Rohm & Haas Co., 865 F. Supp. 2d 649, 671 (E.D. Pa. 2012) (denying motion to dismiss a tortious interference with prospective contractual relations claim despite uncertainty as to whether plaintiff would have received certain contracts because determining a "reasonable probability" is a fact intensive analysis more suitable for judgment at a later stage); O'Driscoll v. Argosy Univ., Case No. 12-c-10164, 2014 WL 714023, at *4 (N.D. Ill. Feb. 25, 2014) (finding that Plaintiff had a reasonable expectation of entering a business relationship despite not obtaining a firm offer of employment because employers had expressed an interest in hiring her and she had moved to the reference-check stage).

Further, Wood has sufficiently alleged that Harnden's conduct during the NYU reference check was intentional and improper. "Only improper interference is deemed tortious in New Hampshire." Nat'l Empl. Serv. Corp. v. Olsten Staffing Serv., 145 N.H. 158, 162 (2000).

Inducing NYU by defamatory statements not to hire Wood could constitute intentional and improper conduct sufficient to support Wood's claim for intentional interference with prospective contractual relations. See Wilcox Indus. Corp., 870 F. Supp. 2d 296, 307 (D.N.H. 2012) (citing Restatement (Second) of Torts § 767 cmt. c & § 768 cmt. e and Liberty Leather Corp. v. Callum, 653 F.2d 694, 699 (1st Cir. 1981) ("Undoubtedly a cause of action for tortious interference with business relations may rest upon defamatory remarks.")). As previously discussed, the NYU reference check and ensuing "blacklisted" comment states an adequate defamation claim, which is sufficient to meet the threshold of improper interference. See id. Given the underlying context of the reference check, Wood also alleges adequate facts to infer that this statement was intentional, made within the scope of Harnden's employment, and said to diminish the likelihood that NYU would hire Wood. In sum, Wood adequately pleads his claim for intentional interference with prospective contractual relations claim.

## III. Retaliation in Violation of RSA 275-E:2 (Count IV)

The fate of Wood's retaliation claim depends, in some part, on the court's interpretation of a statute. Wood alleges that he engaged in protected whistleblowing activity when he reported Harnden's violations of COVID-19 testing policies and that the activities that form the bases of his defamation claim (the NYU reference check, Letsrun.com post, Dave Altman statements, and removing his information from the rosters on Dartmouth's website) constituted retaliation in violation of New Hampshire's Whistleblowers' Protection Act (WPA). Dartmouth argues that Wood cannot state a claim under the statute because he was no longer an employee when he suffered the alleged retaliatory conduct. In response, Wood argues that post-employment

retaliation can be actionable as long as he was an employee when he reported Harnden's violations of law and rules. The New Hampshire Supreme Court has yet to address the issue.

The WPA provides:

> No employer shall harass, abuse, intimidate, discharge, threaten, or otherwise discriminate against any employee regarding compensation, terms, conditions, location, or privileges of employment because: (a) the employee, in good faith, reports or causes to be reported, verbally or in writing, what the employee has reasonable cause to believe is a violation of any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States.

RSA 275-E:2. To state a claim under the statute, Wood must adequately allege that "(1) he engaged in an act protected by the [WPA], (2) he suffered an employment action proscribed by the [WPA], and (3) there was a causal connection between the protected act and the proscribed employment action." Appeal of Seacoast Fire Equip. Co., 146 N.H. 605, 608 (2001).

Relying on the New Hampshire Supreme Court's analysis in Appeal of Northeast Rehab. Hospital, Dartmouth argues that Wood fails on the second prong because the WPA's plain language only protects current employees from prohibited actions. 149 N.H. 83, 85 (2003) ("RSA 275-E:2, I(a) clearly protects only an 'employee' from prohibited actions of an employer" and "we also find nothing in RSA 275-E:1 to indicate that the term 'employee' was intended to include a past or future employee"). However, Northeast Rehab. concerned an employee who did not engage in protected conduct until after the employment relationship ended. The central holding of Northeast Rehab. was that the WPA "protects only persons who are employed by the employer at the time they *report* a violation of law or rule." Id. at 86 (emphasis added). Nonetheless, the Supreme Court reached its conclusion by focusing on the plain language of the statute, explaining:

> We also find nothing in RSA 275–E:1 to indicate that the term "employee" was intended to include a past or future employee. Accordingly, we conclude that the

> plain meaning of the term "employee" as used in the Act encompasses only persons currently employed by the employer.

Id. Applying that reasoning to the current case, it would appear that Dartmouth is correct that Wood's WPA claim fails as a matter of law.

But Wood's claim does not run afoul of Northeast Rehab.. The Supreme Court did not squarely address whether the WPA proscribes post-employment retaliation when protected conduct occurred during employment. Moreover, the Supreme Court acknowledged in Northeast Rehab. that it will resolve questions of law concerning whistleblower claims "in a way that best effectuates the manifest purposes of the act, namely, to encourage employees to come forward and report violations without fear of losing their jobs and to ensure that as many alleged violations as possible are resolved informally within the workplace." Id. (quoting Appeal of Osram Sylvania, 142 N.H. 612, 617 (1998)). This same purpose applies whether the retaliation occurs during the employment relationship or after. Allowing an employer to retaliate post-employment would be nearly as effective at chilling protected conduct as allowing an employer to retaliate during employment.

This court has previously suggested that post-employment retaliatory conduct could give rise to an actionable claim. See Lieber v. Marquis Mgmt., 691 F. Supp. 3d 334, 357 n.75 (D.N.H. 2023). When a state's highest court has not spoken directly on an issue, a federal court sitting in diversity must predict how that court would likely decide the issue by looking at relevant statutory language, analogous decisions, and other sources of authority. Barton v. Clancy, 632 F.3d 9, 17 (1st Cir. 2011). The New Hampshire Supreme Court regularly considers federal cases, standards, and the construction of Title VII of the Civil Rights Act of 1964 when assessing the WPA and other related statutes. Seacoast Fire 146 N.H. at 608 ("[F]ederal standards used to evaluate retaliation claims under Title VII are useful in resolving claims under RSA chapter 275-

E."); In re Hardy, 154 N.H. 805, 812 (2007) (applying Title VII concepts of "pretext" and "mixed motive" to WPA case); see Scarborough v. Arnold, 117 N.H. 803, 807 (1977) (reasoning that analysis of federal courts' construal of similar provisions of Title VII is helpful towards determining construction of RSA 354-A, New Hampshire's anti-discrimination statute). Further, the First Circuit agreed with the Maine District Court's decision to apply federal standards arising under Title VII case law in an analogous decision in which Maine's highest court had not yet decided what burden appellees must bear under Maine's WPA. See Wytrwal v. Saco Sch. Bd., 70 F.3d 165, 172 (1st Cir. 1995).

As such, this court could predict that the New Hampshire Supreme Court would engage in a similar analysis, using Title VII's standards and construction to decide whether post-employment retaliation is within the scope of the New Hampshire WPA. If the court were to do so, it would likely conclude that the WPA protects former employees from such conduct. See Robinson v. Shell Oil Co., 519 U.S. 337, 339 (1997) (post-employment retaliation claims are actionable under Title VII).

Dartmouth asks this court to certify this question to the New Hampshire Supreme Court "if the court has any concern that RSA 275-E proscribes post-employment conduct." Doc. no. 24 at 7. The court may certify a question to the New Hampshire Supreme Court when the issue of state law "may be determinative" of the case, and if "it appears [that] . . . there is no controlling precedent in the decisions of" the New Hampshire Supreme Court. N.H. Sup. Ct. R. 34. It is not clear at this stage whether this issue will be determinative of Wood's RSA 275-E claim. The court will consider whether to certify the question and, if so, at what procedural posture such a certification would be most advantageous. Dartmouth's motion to dismiss Count IV is denied without prejudice as to Wood's claims based on the NYU reference check and the alterations to

Dartmouth's website. Because Wood has failed to allege that Dartmouth could be vicariously liable for the Letsrun.com post or Atman's comments, Count IV is dismissed insofar it relies on those allegedly retaliatory acts.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss the complaint (doc. no. 22) is granted as to the portions of Count I and Count IV based on the "letsrun.com" blog post or the statements by Dave Altman and is otherwise denied.

SO ORDERED

Samantha D. Elliott
United States District Judge

September 28, 2026

cc: Counsel of Record.